

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

July 17, 2026

**VIA ECF**
The Honorable Dale E. Ho
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *Noor Doe et al. v. Mullin et al.*, No. 26 Civ. 2103 (DEH) ("*Noor*")
              *Abdo Doe et al. v. Mullin et al.*, No. 26 Civ. 2280 (DEH) ("*Abdo*")

Dear Judge Ho:

This Office represents defendants (the "government") in the above-referenced lawsuits brought by Plaintiffs challenging the decision of defendant U.S. Secretary of Homeland Security (the "Secretary") to terminate Yemen's Temporary Protected Status ("TPS") designation. Pursuant to the Court's July 7, 2026, Order, the government respectfully submits this letter to seek a stay of discovery pending the Court's decision on the government's forthcoming motions to dismiss Plaintiffs' First Amended Complaints (*Noor*, ECF No. 49; *Abdo*, ECF No. 85). Good cause exists to stay discovery because: (1) the government's forthcoming motions will likely be dispositive of the entirety of both actions, especially in light of the Supreme Court's recent decision in *Mullin v. Doe*, No. 25-1083, 2026 WL 1825840 (U.S. June 25, 2026) ("*Mullin*"); (2) the burdens of discovery on the parties and the Court are likely to be substantial; and (3) Plaintiffs would suffer no unfair prejudice from a brief stay pending resolution of a threshold motion.

## I.      Background

Plaintiffs filed First Amended Complaints on July 2, 2026 (*Noor*, ECF No. 49) and July 14, 2026 (*Abdo*, ECF No. 85). The *Noor* Plaintiffs bring two equal-protection claims, alleging that the termination of Yemen's TPS designation was motivated by national-origin and by race and ancestry discrimination, along with an APA claim. *See Noor*, ECF No. 49 ¶¶ 82–97. The *Abdo* Plaintiffs bring two APA claims, an equal-protection claim, and two new claims: a due process claim asserting a liberty and property interest in TPS, and an *ultra vires* claim asserting that the Secretary lacked authority to terminate Yemen's designation because that power rests with the Attorney General and was never transferred to the Secretary. *See Abdo*, ECF No. 85 ¶¶ 169–192.

Under the Court's briefing schedule, the government's motions to dismiss are due August 12, 2026, and will be fully briefed by September 10, 2026. *Noor*, ECF No. 55. The government will move to dismiss every claim. As set forth below, *Mullin* forecloses Plaintiffs' non-constitutional claims, and Plaintiffs' remaining claims, including their equal-protection and due process claims, fail to state a claim as a matter of law. Because the motions would resolve both actions, discovery should be stayed pending their resolution.

"A district court has discretion to stay discovery pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, upon a showing of good cause." *Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 19 Civ. 6957 (AJN), 2020 WL 6642188, at *1 (S.D.N.Y. Nov. 12, 2020) (citation omitted). "If a motion to dismiss is pending, courts typically consider several

factors in determining whether to stay discovery; including: (1) whether a defendant has made a strong showing that the plaintiff's claim is unmeritorious, (2) the breadth of discovery and the burden of responding to it, and (3) the risk of unfair prejudice to the party opposing the stay." *Alapaha View Ltd. v. Prodigy Network, LLC*, No. 20 Civ. 7572 (VSB), 2021 WL 1893316, at *2 (S.D.N.Y. May 10, 2021) (quotation marks omitted). Each of these considerations supports a stay.

## II.    The Government's Motions to Dismiss Are Likely to Resolve the Actions

A stay is warranted first because the government's motions to dismiss would dispose of the actions and are certainly not unfounded in the law. *See Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, No. 09 Civ. 5874 (RPP), 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009) (finding pending motion to dismiss supported a stay where the defendant "put forth in its motion multiple, independent arguments for dismissal and the motion appears not to be unfounded in the law" (citation and quotation marks omitted)). As courts in this District have recognized, where a party has "presented substantial arguments for dismissal of many, if not all, of the claims asserted in this lawsuit, a stay of discovery is appropriate." *HAHA Glob., Inc. v. Barclays*, No. 19 Civ. 04749 (VEC) (SDA), 2020 WL 832341, at *1 (S.D.N.Y. Feb. 20, 2020) (citation and quotation marks omitted); *Press v. Primavera*, No. 21 Civ. 10971 (JLR), 2022 WL 17736916, at *2 (S.D.N.Y. Dec. 16, 2022) (staying discovery because, among other reasons, the defendant made "substantial arguments" for dismissal); *see also Richardson v. City of New York*, No. 21 Civ. 5080 (PAE) (KHP), 2022 WL 2003340, at *2 (S.D.N.Y. June 6, 2022) (staying discovery where the defendants' motion to dismiss "arguments are supported by case law from this Circuit").

A stay is warranted because the government's motions to dismiss are not unfounded in the law and, in fact, would dispose of both actions. *Mullin* forecloses Plaintiffs' APA claims outright. The Court held that the TPS statute's judicial-review bar, 8 U.S.C. § 1254a(b)(5)(A), "applies to all non-constitutional claims." 2026 WL 1825840, at *10. It rejected the argument that the bar reaches only substantive determinations and not procedural challenges, holding that a "'determination' may concern procedural or substantive questions." *Id.* at *8. And it rejected the contention that the Secretary's decision "whether to consult other agencies" is reviewable, explaining that "subsidiary decisions merge into the final agency action," so that "[i]f the final agency action is unreviewable, then so too are subsidiary determinations." *Id.* at *10. Plaintiffs do not contend otherwise. *See Noor*, ECF No. 56, at 17; *Abdo*, ECF No. 81, at 1.

The government also anticipates seeking to dismiss Plaintiffs' equal-protection claims. Even assuming Plaintiffs' equal-protection claims are reviewable,[1] their theories are not viable under *Mullin*, in which the Supreme Court rejected a comparable equal-protection challenge to a TPS termination on a comparable record. As the government explained in its reply in support of its motion for an indicative ruling and for a stay pending appeal (*Abdo*, ECF No. 83): First, the race-neutral explanation the Court credited in *Mullin* defeats an equal-protection claim here regardless of whether it is labeled race or national-origin discrimination. The Court credited the administration's opposition to the TPS program generally, reflected in its termination of every designation that came up for review, "13 in all." 2026 WL 1825840, at *5. A policy applied consistently to the nationals of numerous countries is not evidence that any one nationality was singled out. Second, the procedural departures Plaintiffs allege do not suggest that Yemen was treated differently on account of race or national origin. Plaintiffs contend principally that the

---

[1] *But see Mullin*, 2026 WL 1825840, at 13 (Thomas, J., concurring) ("[T]his equal protection claim is barred by the statute. It falls within the plain text of § 1254a(b)(5)(A)'s judicial-review bar.").

Secretary did not adequately consult appropriate agencies and that she terminated Yemen's designation despite adverse country conditions. But those alleged departures are common to the recent TPS terminations generally. A departure from an agency's "normal procedural sequence" is probative only where it indicates that the challenged decision was handled differently because of a protected characteristic. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977). Third, distinctions drawn among nationalities by the Executive are a permissible feature of immigration law and "must be upheld so long as they are not wholly irrational." *Rajah v. Mukasey*, 544 F.3d 427, 438 (2d Cir. 2008) (alterations and quotation marks omitted); *see also Mullin*, 2026 WL 1825840, at *16 (Thomas, J., concurring) ("[O]ur immigration laws have distinguished among aliens based on their national origin from the beginning," and "applicants for immigration are treated differently based on their nationality as a matter of course.").

The government will also move to dismiss the *Abdo* Plaintiffs' remaining two claims. Their due process allegations fail to state a claim for relief because, as a matter of law, TPS holders have no protected liberty or property interest in a designation that is temporary by statute and subject to termination. *See Mullin*, 2026 WL 1825840, at *16 (Thomas, J., concurring) ("The termination of Haiti's TPS designation does not deprive respondents of 'life, liberty, or property'. . . . The discretionary and limited status that a TPS designation provides, like any immigration status for aliens, is a government-created privilege, not a core private right." (citations and quotation marks omitted)); *cf. CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 328 (D. Md. 2018) ("the explicitly temporary nature of the [TPS] program suggests" plaintiffs cannot establish "reliance interests"). Further, Plaintiffs' *ultra vires* claim fails because, contrary to Plaintiffs' claim, the Secretary—not the Attorney General—has authority to terminate a TPS designation, and *Mullin* has already foreclosed this argument by confirming that the Secretary has authority over TPS. *Mullin*, 2026 WL 1825840, at *4 (noting that "[r]esponsibility for TPS decisions rests with the Secretary" (citing 6 U.S.C. §§ 552(d), 557)). Although Plaintiffs correctly note that the TPS statute refers to the "Attorney General," that is only because the Department of Homeland Security did not exist when Congress created TPS in 1990. The Homeland Security Act of 2002 transferred the immigration functions, including authority over TPS, to the Secretary.[2] *See, e.g.*, *Ramos v. Wolf*, 975 F.3d 872, 879 n.1 (9th Cir. 2020), *vacated on grant of reh'g en banc*, 59 F.4th 1010 (9th Cir. 2023); *Mejia Rodriguez v. DHS*, 562 F.3d 1137, 1140 n.3 (11th Cir. 2009).

Because a decision in the government's favor in connection with the government's motions to dismiss would resolve the entirety of both actions, a stay is appropriate.

## III.    The Breadth and Burden of Discovery Weigh in Favor of a Stay

The second factor—the breadth of discovery and the burden of responding to it—likewise favors a stay for multiple reasons. *First*, the government has already produced the certified administrative record underlying the Secretary's termination decision, and the Court previously ordered the government to produce certain additional redacted material. *See Abdo*, ECF Nos. 37, 47. Plaintiffs thus already have substantial documentary materials concerning the decision they challenge, so there is no urgency to proceed with the remaining discovery now. To the extent Plaintiffs seek additional discovery in support of their constitutional claims, that discovery would

---

[2] Plaintiffs' *ultra vires* theory is also self-defeating. If the Secretary lacked authority to terminate Yemen's TPS designation because that authority purportedly rests with the Attorney General, then the Secretary equally lacked authority to designate Yemen for TPS in the first instance—in which case Plaintiffs would have no valid TPS designation to protect.

reach beyond the existing record and, as set forth below, such discovery would likely involve requests for highly sensitive material that the government will deem protected by the deliberative process privilege, the law enforcement privilege and other privileges, which will likely lead to numerous discovery disputes between the parties. Indeed, the government's production of the administrative record resulted in several disputes that the Court was required to resolve. A stay would defer only that additional discovery, which can await the Court's threshold ruling.

*Second*, the additional requested discovery will be broad and complex. Plaintiffs' equal-protection theory rests, in part, on an alleged decades-long pattern of Yemen-specific adjudication practices that Plaintiffs trace back some fifteen years and across officials serving in multiple presidential administrations. *See Noor*, ECF No. 49 ¶¶ 59–70. Likewise, although these lawsuits challenge only the Secretary's termination of Yemen's TPS designation, the Amended Complaints also include allegations relating to the government's termination of TPS for other countries, which Plaintiffs allege reflects a common discriminatory purpose. *See Abdo*, ECF No. 85 ¶¶ 63–71, 83–111. As these proceedings have already shown, discovery into these allegations would involve coordination among multiple agencies a lengthy period, and the conduct of officials no longer in government. Discovery into the Secretary's decision to terminate Yemen's TPS designation would itself be complex, and the additional allegations in the Amended Complaints would expand the breadth and burden of discovery even further.

The discovery Plaintiffs have said they intend to obtain confirms as much. In their April 17, 2026, motion to compel, Plaintiffs previewed the evidence that they would seek, including "[a]ll communications by or with DHS since January 17, 2025 regarding whether to terminate the TPS designation for Yemen," and "[a]ll documents in the custody of DHS and communications by or with DHS since January 17, 2025 about DHS press releases or internal DHS memoranda concerning terminating TPS designations for Yemen, including any memoranda or guidance about how to respond to questions from media or TPS holders." *Abdo*, ECF No. 44, at 4–5. These requests alone would reach every DHS communication regarding the Yemen decision over more than a year and would require the collection and review of voluminous records across multiple government components. Courts in this District have stayed discovery in similar circumstances. *See, e.g.*, *Alapaha View*, 2021 WL 1893316, at *2 (staying discovery where the case "involves conduct spanning over multiple years" and multiple parties, because "even document discovery would be onerous"). Requiring the parties to undertake discovery of that magnitude before the Court has determined whether any claim survives *Mullin* would impose burdens not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

*Third*, as indicated above, much of that discovery would implicate the deliberative process privilege and other governmental privileges. Plaintiffs' constitutional theory, as alleged, turns on the motivations of executive-branch decisionmakers. *See, e.g.*, *Noor*, ECF No. 49 ¶ 49 ("[T]he contemporaneous statements of the officials responsible are probative of discriminatory intent."); *Abdo*, ECF No. 85 ¶ 114 ("This animus significantly motivated the Trump Administration's plan to end TPS designations and is evidenced by numerous statements made by [government] officials."). In discovery, Plaintiffs would likely seek internal agency deliberations, draft documents, and inter- and intra-agency communications concerning the termination decision. Responding to such requests would require the government to review and log large volumes of documents, and it would invite privilege disputes and motions to compel—all in a case that is unlikely to survive the motions to dismiss. The parties have, moreover, already litigated the privileged status of such materials. Plaintiffs moved to compel the government's production of an unredacted USCIS Decision Memorandum, which the government withheld as predecisional and

4

deliberative, and the government opposed on deliberative process grounds. *See Abdo*, ECF Nos. 44, 45. In light of the allegations in Plaintiffs' Amended Complaints, merits discovery would reach the same categories of internal deliberations and interagency communications and would implicate the same privileges across a larger volume of documents.

*Fourth*, the litigation to date confirms that such discovery would generate repeated disputes requiring judicial resolution. The redaction of a single page of the administrative record, at AR-000245, resulted in a motion to compel, an opposition asserting the law enforcement privilege, a court order directing the government to explain the specific harms disclosure would cause, and a further submission, supported by a declaration from the Deputy Director of the Threat Screening Center, requesting that the material be sealed as part of the federal government's consolidated terrorist watchlist. *See Abdo*, ECF Nos. 44–45, 47, 50–51. Merits discovery reaching privileged executive branch deliberations would give rise to disputes of that nature on a greater scale, burdening the parties and the Court alike. Those burdens would be avoided if, after reviewing the parties' briefing, the Court grants the government's motions to dismiss. As one court in this District has explained, because the disposition of a motion to dismiss "may significantly narrow, if not eliminate, the issues remaining in this case . . . proceeding with discovery while the motion is pending would waste the parties' resources and would constitute an undue burden." *Alapaha View*, 2021 WL 1893316, at *2 (citation omitted).

## IV.    A Brief Stay Would Not Unfairly Prejudice Plaintiffs

Finally, because discovery would be stayed only pending the Court's decision on the government's motions, "a short delay at this time would not be unfairly prejudicial." *Hertz*, 2020 WL 6642188, at *1. Indeed, "[a] stay pending determination of a dispositive motion that potentially eliminates the entire action will neither substantially nor unduly delay the action, should it continue." *Alapaha View*, 2021 WL 1893316, at *3 (citation and quotation marks omitted); *Spinelli v. Nat'l Football League*, No. 13 Civ. 7398 (RWS), 2015 WL 7302266, at *2 (S.D.N.Y. Nov. 17, 2015) ("At this stage of the litigation, with the viability of the new Complaint unresolved, a delay in discovery, without more, does not amount to unfair prejudice.").

The parties are already proceeding under a briefing schedule, and the government's motions will be fully briefed within approximately two months. A stay of that limited duration would not meaningfully delay the litigation. Nor is there any risk that a brief stay would result in the loss of evidence or the fading of witness memories: the challenged TPS termination was published in the Federal Register on March 3, 2026, and the events surrounding the Secretary's decision are recent. *See Hertz*, 2020 WL 6642188, at *1 ("Because Plaintiff's discovery requests appear to be primarily for documentary evidence and for testimony of corporate witnesses who will rely heavily on documents in preparing for their depositions, there is little risk of that fading memories with the passage of time will result in unfair prejudice to Plaintiff if discovery were stayed." (citation and quotation marks omitted)). Resolution of the government's threshold motions, which may eliminate the entirety of both actions, will therefore neither substantially nor unduly delay this litigation should it proceed, while the alternative would require the parties and the Court to undertake burdensome and potentially unnecessary discovery.

\*\*\*

For the foregoing reasons, the government respectfully requests that the Court stay discovery pending the adjudication of the government's motions to dismiss.  We thank the Court for its consideration of these matters.

Respectfully,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:   */s/ Adam Gitlin*
      MARK OSMOND
      ADAM GITLIN
      Assistant United States Attorneys
      86 Chambers Street, Third Floor
      New York, NY 10007
      Tel.: (212) 637-2713/2734
      mark.osmond@usdoj.gov
      adam.gitlin@usdoj.gov

cc: All counsel of record (via ECF)

6