July 17, 2026

The Honorable Dale E. Ho
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:  *Noor Doe v. Noem*, No. 26 Civ. 2103 (DEH); *Abdo Doe v. Noem*, No. 26 Civ. 2280
     (DEH); Plaintiffs' Consolidated Letter Brief in Support of Discovery

Dear Judge Ho:

Pursuant to the Court's July 2, 2026, Order (ECF No. 78; No. 26 Civ. 2103 ECF No. 53), Plaintiffs in the above-captioned actions respectfully submit this consolidated letter brief on the propriety of discovery while Motions to Dismiss are pending. Unless otherwise noted, ECF citations are to the docket in No. 26 Civ. 2280. This Court reserved Plaintiffs' equal protection claim when it entered the postponement order, *Doe v. Noem*, 2026 WL 1192079, at *15 n.14 (S.D.N.Y. May 1, 2026), and *Mullin v. Doe*, No. 25-1083, 2026 WL 1825840 (U.S. June 25, 2026), decided only the non-constitutional claims. The reserved claim turns on the Secretary's purpose. The records of that purpose are in Defendants' possession, and none has been produced. Plaintiffs respectfully ask that discovery proceed.

Eight days ago, in the parallel Burma TPS litigation—the posture presented here: a reserved equal protection claim, a postponement order on appeal, and a request to await *Mullin*—the court declined to halt discovery. It overruled "the government's argument that the plaintiffs are completely barred from pursuing discovery," explaining that *Mullin* "was an interim decision" that "only analyzed public statements"; that "[n]othing in the decision suggests that the plaintiffs here cannot try to marshal the additional evidence necessary to prove their equal protection claim"; and that "evidence of internal decisionmaking may reveal a discriminatory motive not clearly reflected in public statements." *Aung Doe v. Mullin*, No. 25 C 15483, 2026 U.S. Dist. LEXIS 151747, at *17–19, 2026 WL 1983721 (N.D. Ill. July 9, 2026) (Kennelly, J.).

## I.    Discovery is the ordinary course, and the standard for departing from it

A motion to dismiss does not automatically stop discovery under the Federal Rules. "[T]he party seeking a stay bears the burden of demonstrating good cause," *Druckman v. Morgenstern*, 26 Civ. 993 (PAE), 2026 WL 791896, at *1 (S.D.N.Y. Mar. 20, 2026), and good cause under Fed. R. Civ. P. 26(c) means "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Republic of Turkey v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018) (denying stay). Discovery "should not be routinely stayed simply on the basis that a motion to dismiss has been filed," *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013)—and in *Aung Doe* it was not stayed while the postponement order there was on appeal. Three factors govern whether discovery should be stayed: "(1) whether a defendant has made a strong showing that the plaintiff's claim is unmeritorious, (2) the breadth of discovery and the burden of responding to it, and (3) the risk of unfair prejudice to the party opposing the stay." *Druckman*, 2026 WL 791896, at *1 (quoting *Miller v. Brightstar Asia, Ltd.*, 20-CV-4849 (GBD) (JLC), 2020 WL 7483945, at *2 (S.D.N.Y. Dec. 21, 2020)); *accord Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D.

367, 368 (S.D.N.Y. 2002); *OMG Fid., Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300, 304 (N.D.N.Y. 2006). Each independently favors proceeding. Parts A, B, and C address them in turn. Two timing facts frame all three: no motion to dismiss is on file, and under the schedule the Court adopted, Defendants' combined opposition and motion is due August 12, with briefing concluding September 10, 2026 notwithstanding reasonable timing for a decision. ECF No. 80 (No. 26 Civ. 2103 ECF No. 55). In *Spencer Trask*, by contrast, the stay ran four weeks to a fully briefed motion the court "intend[ed] to decide . . . expeditiously." 206 F.R.D. at 368.

## II.     The three factors

### A.  Whether Plaintiff's claim is unmeritorious  - The claim *Mullin* left undecided, and the facts particular to Yemen

*Mullin* reviewed a grant of interim relief concerning Haiti. Assuming the *Arlington Heights* framework, the Supreme Court concluded, on the limited record before it, that the *Miot* respondents were unlikely to prove that race motivated Haiti's termination. *Mullin*, 2026 WL 1825840, at *11–13. Review at that stage yields "only a predictive—not a final—decision about the outcome of the case." *Id.* at *11 (opinion of Alito, J.). The record consisted of public statements, and the Court weighed them as such: "Political discourse by prominent public figures is increasingly couched in terms that would have scandalized the public just a short time ago, and the statements cited by *Miot* respondents—especially those concerning Haiti and Haitian immigrants to this country—exemplify this development." *Id.* at *12. The holding under § 1254a(b)(5)(A) reached "non-constitutional claims" only, *id.* at *10, and constitutional claims survive a statutory review bar unless Congress speaks clearly. *Webster v. Doe*, 486 U.S. 592, 603 (1988). No internal communications of any decisionmaker—for Haiti or for any country—were before the Court. If public statements standing alone are discounted as discourse, where does evidence of purpose reside? In the files discovery reaches: *Mullin* "only analyzed public statements," and nothing in it forecloses Plaintiffs from acquiring "the additional evidence necessary" to prove the reserved claim. *Aung Doe*, 2026 U.S. Dist. LEXIS 151747, at *18.

Yemen's termination was not before the Supreme Court, and its facts stand apart. In terminating, the Secretary determined that "Yemen still experiences extraordinary and temporary conditions" "that prevent Yemeni nationals from returning in safety"—a finding she made for no other country whose designation she ended. *Doe v. Noem*, 2026 WL 1192079, at *7 & n.9; ECF No. 24, at 4–5. On December 1, 2025, she called for "a full travel ban on every damn country that's been flooding our nation with killers, leeches, and entitlement junkies," declaring, "WE DON'T WANT THEM. NOT ONE." First Am. Compl. ¶¶ 8, 50 & Ex. O (No. 26 Civ. 2103 ECF No. 49). The next day, USCIS placed a hold on pending benefit requests from countries designated, in facially neutral terms, "High-Risk Case Countries." Yemen is one of them. USCIS Memorandum PM-602-0192 (Dec. 2, 2025). Nor is this the first pairing of neutral process language to the public and with discriminatory Yemeni nationality language hidden in the government's files. In prior litigation over Yemeni applications, discovery produced State Department correspondence in which consular officers in Sana'a wrote of Yemeni cases: "I am liking the idea of required testing resulting in abandoned cases that never get to us. We'd love to just not get cases here." No. 18-cv-398 (NGG) (E.D.N.Y. Sept. 7, 2018), ECF No. 37-1, at 60–62 ("RE: Yemen DNA Pilot Inquiry"). The operative complaint alleges Yemen-specific discriminatory processing directives. First Am. Compl. ¶¶ 60–61 & Ex. B, and State Department fraud-summary reporting finding all Yemen cases "fraudulent until proven otherwise." Cable 09SANAA1729. The public statements are recent; the record of singling out Yemen is not; and that record continues to develop. On these facts, can the reserved claims be described, "on their face," as "utterly devoid of merit"?

2

*Republic of Turkey*, 316 F. Supp. 3d at 678 (denying stay). National origin, like race, is a suspect classification, *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985); the claim was pleaded before *Mullin* issued and reserved by this Court; and there is "no pending motion that potentially disposes of this entire action." *CT Espresso LLC v. Lavazza Premium Coffees Corp.*, 22-CV-377 (VSB), 2022 WL 1639485, at *2 (S.D.N.Y. May 24, 2022) (denying stay); *but cf. Boelter v. Hearst Commc'ns, Inc.*, 2016 WL 361554, at *5 (S.D.N.Y. Jan. 28, 2016) (staying discovery where each argument "alone may warrant dismissal of Plaintiff[']s entire complaint").

### B. The discovery sought, and the records that exist

Plaintiffs seek two categories of discovery — the same two the court in *Aung Doe* permitted to go forward. *See* 2026 U.S. Dist. LEXIS 151747, at *3–4, *18–19. First, extra-record discovery through four requests for production: (1) documents concerning efforts to end or limit TPS as a program generally; (2) documents concerning Defendants' implementation of Executive Order 14,159, *Protecting the American People Against Invasion*; (3) documents regarding implementation of and compliance with the Travel Ban in relation to TPS; and (4) documents concerning implementation of Executive Order 14,163, including proposals and policies to give preference within the United States refugee system to English speakers, white South Africans, and Europeans who oppose migration or support "populist" political parties. *See* ECF No. 44. Second, completion of the record Defendants produced, by adding four items: an unredacted copy of the USCIS Decision Memorandum for Yemen TPS; the Records of Clearance and Approval for the Yemen termination; any reports on conditions in Yemen authored by the Department of State after January 20, 2025; and any other documents withheld on deliberative-process grounds. *Id.* The requests reach the "determination" as the Supreme Court read that term: "the whole process leading to a final decision," comprising each "discrete decision made by the Secretary," made "either personally or through her subordinates." *Mullin*, 2026 WL 1825840, at *2, *7–8.

What the produced record contains is a matter of this Court's findings. The CAR reflects "only one communication thread between DHS and another agency regarding the Secretary's termination decision: an exchange of four short emails, most of which concern deadlines." *Doe v. Noem*, 2026 WL 1192079, at *8. Several cited sources "do not support the propositions for which the Secretary references them"; the pull-factor rationale reproduced its source's typographical error; and the asserted gang nexus was unsubstantiated. *Id.* The decision memorandum was produced with everything redacted except the word "Decision" and a signature until the Court ordered production, and the data behind the gang assertion remains withheld. ECF Nos. 36, 44, 47. *Arlington Heights* makes the sequence of a decision material, and this record does not disclose it. Where the inquiry has been permitted, it has produced evidence: in the Haiti case, extra-record discovery yielded internal USCIS emails this Court quoted — staff writing that there was no "empirical evidence to support th[e] claim" that TPS encourages migration — *id.*, and in the prior Yemen litigation, discovery yielded the Sana'a correspondence quoted above.

The record rule does not confine that inquiry. It would be "perverse" for courts assessing "whether government actors have engaged in invidious discrimination" to be limited to "the record that those very decisionmakers may have carefully curated to exclude evidence of their true 'intent' and 'purpose.'" *New York v. U.S. Dep't of Commerce*, 345 F. Supp. 3d 444, 452 (S.D.N.Y. 2018); *accord Dep't of Commerce v. New York*, 588 U.S. 752, 781 (2019) (on a "strong showing of bad faith or improper behavior," "such an inquiry may be warranted and may justify extra-record discovery" (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971))). As *Cook County* put it, in language *Aung Doe* adopted: "Most people know by now that the quiet part should not be said out loud. . . . So if a facially neutral agency action is motivated by racial

animus, that animus almost certainly will not be 'disclose[d]' in the agency's 'contemporaneous explanation' for that action. And because evidence of racial animus (if any) will reside outside the administrative record, presumptively limiting discovery to the record can allow the racial motivations underlying racially motivated policymaking to remain concealed." *Cook County v. Wolf*, 461 F. Supp. 3d 779, 794–95 (N.D. Ill. 2020) (citation omitted), *quoted in Aung Doe*, 2026 U.S. Dist. LEXIS 151747, at *10. A plaintiff pressing such a claim is "entitled to discovery on that claim regardless of whether it can satisfy the 'strong showing' standard applicable to APA claims," *Cook County*, 461 F. Supp. 3d at 795; the record rule "is a poor fit for constitutional claims that turn on government intent"; and here, as there, "the problem is that the Secretary's decisionmaking is not discernible on the record," which "warrants considering extrinsic evidence." *Aung Doe*, 2026 U.S. Dist. LEXIS 151747, at *9, *12. This Court's May findings stand unchanged — the predicate *Aung Doe* found sufficient over the same objection. *Id.* at *11–12. Privileges, where asserted — including the deliberative-process withholdings in the second category — are resolved document by document. *In re Subpoena Duces Tecum Served on Off. of Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998); *Aung Doe*, at *13–14. Defendants hold the records, and a protective order and orderly sequencing address the burden of producing them.

### C. The timeline, and prejudice to plaintiffs

The third factor asks what a stay would cost the party opposing it, and the posture supplies the answer in facts. The postponement order rests on the APA holding alone; the equal protection claim was reserved and has been decided by no court. Defendants have appealed and moved for vacatur, and this Court has deferred that motion until the *Mullin* mandate issues — July 27 at the earliest — and will rule expeditiously thereafter. No. 26 Civ. 2103 ECF No. 58. Defendants' combined opposition and motion to dismiss is due August 12, with briefing concluding September 10. ECF No. 80 (No. 26 Civ. 2103 ECF No. 55) notwithstanding time for a decision.. No discovery on the reserved claim has occurred, so no evidentiary record on that claim exists — in this Court or in the court of appeals. Under a stay, none could exist until after the deferred vacatur motion is resolved and after the anticipated motion is decided: after the rulings for which the evidence is material. What record on the reserved claim would be before this Court, or the Second Circuit, at that point?

That is the unfair prejudice, and it is concrete. If interim relief is revisited on the APA ground while the reserved claim has no record, approximately 3,000 people — whose safe return even the government has determined cannot be facilitated — lose lawful status and work authorization and face removal to a country under the State Department's highest "Level 4 – Do Not Travel" advisory, *Doe v. Noem*, 2026 WL 1192079, at *5, *15–16, with return barred by proclamation. 91 Fed. Reg. 10,402, 10,406 (Mar. 3, 2026). What is at stake is not the ordinary passage of time. *Cf. Druckman*, 2026 WL 791896, at *2. Nor is the evidence speculative: the same inquiry produced the Haiti emails this Court quoted and the Sana'a correspondence quoted above. Defendants hold the documents; Plaintiffs stand to lose the ability to prove the only claims left to them before the decisions that turn on those claims are made. Discovery now is what preserves that ability.

### Conclusion

The claim this Court reserved turns on purpose. The produced record is silent on it. The same inquiry has twice produced such evidence—in the Haiti litigation and in the prior Yemen litigation—and the coordinate court in *Aung Doe* permitted it to proceed on this posture eight days ago. Plaintiffs respectfully request that the Court permit discovery to proceed and, as in *Aung Doe*,

resolve any objections of scope, proportionality, or privilege request by request after the parties confer. 2026 U.S. Dist. LEXIS 151747, at *18–19.

Respectfully submitted,

ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND

*/s/ Razeen Zaman*
Razeen Zaman
Helen Anne Schutz Lo
Dinesh McCoy*
Phi Nguyen*
Tel: (212) 966-5932
rzaman@aaldef.org
alo@aaldef.org
dmccoy@aaldef.org
pnguyen@aaldef.org
njain@aaldef.org

CENTER FOR CONSTITUTIONAL RIGHTS
Shayana Kadidal [SK-1278]
Angelo Guisado
Baher Azmy
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6438
Fax: (212) 614-6451
kadidal@ccrjustice.org
aguisado@ccrjustice.org
bazmy@ccrjustice.org

*Counsel for Plaintiffs in 26-cv-2280*

*\*Application for admission pro hac*
*vice forthcoming*

GOLDBERG AND ASSOCIATES

*/s/ Julie A. Goldberg*
Julie A. Goldberg, Esq.
2403 2nd Avenue
New York, New York 10035
Tel: (718) 432-1022
julie@goldbergimmigration.com

*This joint letter is court ordered, Counsel
has no association with CENTER FOR CONSTITUTIONAL RIGHTS,
Shayana Kadida, its employees, its clients or
any representation of the *Abdo Doe v. Noem*,
No. 26 Civ. 2280 case.

*Counsel for Plaintiffs in 26-cv-2103*